TAG AGENTS — APPOINTMENT Upon the termination of any appointed motor license agent in counties over 300,000, whether by discharge, death or retirement, an accounting and audit shall be made, as provided in 47 O.S. 22.30n [47-22.30n] (1971), which shall include, as required by 47 O.S. 22.30m [47-22.30m] (1971), the amount reserved for the continued operation of the office. Thereafter all assets not the personal property of the motor license agent shall be transferred to his successor appointee as determined by the Oklahoma Tax Commission. The Attorney General is in receipt of your letter wherein you ask, in essence, the following question: What disposition is to be made of the assets of a motor license agent appointed pursuant to 47 O.S. 22.22 [47-22.22] (1971), serving in a county of more than 300,000 population upon the termination of that position by death, resignation or otherwise? In order to answer your question, several statutes must be looked at in some detail. Title 47 O.S. 22.22 [47-22.22] (9171), states in part as follows: "The Tax Commission when it deems such to be necessary shall appoint Motor License Agents in any county of this State, to assist in the enforcement and administration of this Act and acts amendatory thereof or akin thereto. Such agents shall be self-employed independent contractors, under the supervision of the Tax Commission. Any such agent upon being appointed, shall furnish and file with the Commission a bond in such amount as may be fixed by said Commission. Such agent shall be removable at the will of the Commission. Such agent shall perform all duties and do such things in the administration of the laws of this State as shall be enjoined upon and required of him by the Commission. Provided, that all appointments of tag agents heretofore made by the Oklahoma Tax Commission and its predecessor, are hereby authorized and confirmed; and ail notary fees and other charges made by such tag agents in connection with the registration of motor vehicles are hereby authorized and validated; and the withholding of such notary fees and other charges made by such tag agents, as full com pensation for their services in connection with the registration of motor vehicles, is hereby authorized, validated and confirmed. "When an application for license is made with the Commission or a Motor License Agent, a registration fee of One Dollar ($1.00) shall be collected. Such fee shall be in addition to the license fees on motor vehicles and shall be retained by the Motor License Agent and such amount retained by the Motor License Agent after payment of his office operating expense has been deducted shall be his compensation for services rendered, or, when paid by a person making or filing his application directly with the Commission, said registration fee of One Dollar ($1.00) shall be apportioned in the same manner as are the license fees on motor vehicles. The Commission shall prepare schedules of registration fees and charges for titles which shall include the fees for such agents as a part of the total amount. The agents shall retain their fees and remit the balance." As can be seen from an examination of the above statute, a fee of One Dollar ($1.00) is added to the license fees on motor vehicles and is to be retained by the motor license agent after operating expenses are paid and shall become his compensation as the motor license agent. The Legislature, however, in 1967 passed other legislation changing and limiting the compensation to be paid to motor license agents in counties in excess of 300,000 population. The first of three sections dealing exclusively with motor license agents in such counties is now codified as 47 O.S. 22.301 [47-22.301] (1971) which states in part as follows: "The Motor License and Tag Agent appointed in the county seat towns or cities under the provisions of this section or Section 22.22 of Title 47, Oklahoma Statutes, shall, out of the motor license agent and tag agent fees so collected under the above provisions, retain as his compensation the sum of Twelve Thousand Dollars ($12 000.00) per year. All profits from acknowledgements, notary or other fees and any food or drink concessions operated in the said agent's office shall be added to the motor license agent and tag agent fees collected under the above provisions . . . The motor license agent and tag agent, out of the concessions and motor license agent and tag agent fees and any other fees collected under the above provisions, shall purchase a faithful performance surety bond in the amount and form required by the County Treasurer, a blanket surety bond covering adequately all office personnel, necessary insurance, necessary office equipment and furniture, and other goods and services essential to the proper operation of the motor license agent and tag agent office." As can be seen from an examination of these pertinent parts of that statute, the motor license agent is to receive his compensation from the fees collected, as provided in Section 22.22, but is limited to retaining only Twelve Thousand Dollars ($12,000.00) of said fees. The balance of said fees, plus profits from acknowledgements, notary or other fees and food and drink concessions are to be added to a fund from which may be expended monies for performance bonds, necessary insurance, necessary office equipment and furniture, and other goods and services essential to the proper operation of the office. The second section dealing with such agents is now codified as 47 O.S. 22.30m [47-22.30m] (1971) and provides as follows: "After the payment of the actual itemized necessary expenses of the operation of the office of the motor license and tag agent have been determined and paid, including reasonable business losses of whatever nature not resulting from the actual negligence or malfeasance of said agent, but not including losses from bad checks, and the compensation fixed herein has been paid, there shall be set aside by the motor license agent and tag agent a sufficient reserve to provide for the continued operation of such office. The amount of such reserve shall be determined by such agent. The gross receipts of such agent from such fees, including notary fees, and concessions less the costs for the operation of the office, the compensation of the agent and such reserve, shall annually be distributed by such agent to the public schools of that county to be placed in the activity funds of such schools as nonchargeable income. Such distribution shall be computed and made in the following manner: "The fiscal year ending June 30 shall be used by the agent to determine the amount of the distribution. The amount to be distributed to each school shall be determined by the agent based upon the average daily attendance of each such school during the preceding school year. In determining such average daily attendance the agent shall be entitled to rely upon the information thereof furnished to him by the State Department of Education and the school districts within that county, the school districts within that county, which Department and school districts are hereby directed to furnish such information to the agent as soon as possible after the close of each school year. Such distribution shall be made by the agent on September 30 of each year or as soon thereafter as practical, and prorated in accordance with the average daily attendance of each such school within such county." This section provides, in essence, a formula for disbursing funds to the public schools of the county which in simplified form is as follows. Gross receipts minus actual office expenses, compensation and a reserve sufficient for the continued operation of the office equals the amounts to be disbursed to the public schools. It should further be noted that this calculation is scheduled for once each year at the end of the fiscal year and at no other time. It was obviously intended and anticipated by the Legislature that in counties of this size the Oklahoma Tax Commission would continue to exercise its discretion in appointing a motor license agent to handle the volume of business in such counties. Realizing this the Legislature provided for the continued operation of the office and, thus, established the formula for disbursal to schools with a reserve for that continued operation established. No exception to the formula is given. Each and every disbursal shall be with a reserve established. Further, no disbursal shall come other than as accounted for at the end of each fiscal year, as set forth in the second paragraph of the above section. Termination by death or resignation or for any other reason of the appointed Motor License and Tag Agent could, of course, occur at any time of the year. Thus, it cannot be presumed that a mere change of an appointee to be a Motor License and Tag Agent would necessitate a disbursal or reduction of assets accumulated to the agency. The third section is consistent with this approach and is now codified as 47 O.S. 22.30n [47-22.30n] (1971): "At the end of each fiscal year, the motor license agent and tag agent shall forward a complete financial statement covering all expenses and disbursements out of the concessions and motor license agent and tag agent fees and other notary fees collected by such agent to the County Treasurer of that county, the County Superintendent of Schools,. and the State Examiner and Inspector. An audited statement and inventory shall be made by the State Examiner and Inspector each fiscal year, and as of the end of the day before a newly appointed motor license agent and tag agent assumes office." Of pertinent note is the last sentence of this section which provides for an audit by the State Examiner and Inspector each fiscal year and at the end of the day before a newly appointed motor license agent and tag agent assumes office. Thus, any change of office would include an inventory of all assets purchased as authorized by law from the fees, concessions, etc. Thus again, an orderly transfer of the motor license and tag agency was contemplated by the Legislature by so providing. It was the obvious intent of these three sections to limit the amount of compensation to those motor license agents (tag agent) in counties in excess of 300,000 population while providing for ordinary business expenses to come from the fees collected, the balance (less sufficient reserve for the continued operation of the office) to be held in trust for the benefit of the public schools of the county. The only exception to this procedure would occur if the Oklahoma Tax Commission determined that a new motor license agent would not be appointed. If this were to be the situation, then no reserve would be necessary and all assets would of necessity have to be liquidated to cash and disbursed to the public schools as otherwise provided by law. It is, therefore, the opinion of the Attorney General that your question be answered as follows: Upon the termination of any appointed motor license agent in counties over 300,000, whether by discharge, death or retirement, an accounting and audit shall be made, as provided in 47 O.S. 22.30n [47-22.30n] (1971), which shall include, as required by 47 O.S. 22.30m [47-22.30m] (1971), the amount reserved for the continued operation of the office. Thereafter all assets not the personal property of the motor license agent shall be transferred to his successor appointee as determined by the Oklahoma Tax Commission. (James H. Gray)